ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 2 8 2011

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JOSEPH LOWERY, BRENDA PACE,
LEOLA GORDON, LISA BARNES,
SHELIA GARVIN, PORTIA CODJOE,
JOYCE CARLISLE, & the GEORGIA
LEGISLATIVE BLACK CAUCUS,
INC.,

Plaintiffs,

NATHAN DEAL, in his Official
Capacity as Governor of the
STATE OF GEORGIA,

Defendant.

TCB

Civil Action
File No.: _____

1:11-CV-0974

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

COME NOW JOSEPH LOWERY, BRENDA PACE, PORTIA CODJOE, LEOLA GORDON, LISA BARNES, SHELIA GARVIN, JOYCE CARLISLE, (each individually, a "Aggrieved Voter Plaintiff"), and the GEORGIA LEGISLATIVE BLACK CAUCUS, INC., a Georgia corporation, and an association of black elected officials in the State of Georgia (the "GLBC" or the "Aggrieved Legislator Plaintiffs"; collectively, the GLBC and the Aggrieved Voter Plaintiffs are the "Plaintiffs"), by and through undersigned counsel, and hereby file this Complaint against NATHAN DEAL, in his official capacity as Governor of the State of Georgia, and thereby, the

1

State of Georgia (the "Defendant"), and show the Court as follows:

## NATURE OF THE CASE

1. Plaintiffs bring this action, pursuant to Section 2 of the Voting Rights Act of 1965, 42 U.S.C. §1973 et seq., (the "VRA"); the Fourteenth Amendment to the Constitution of the United States, the Fifteenth Amendment to the Constitution of the United States, and 42 U.S.C. §1983, seeking injunctive relief, declaratory relief, costs of litigation including, without limitation, attorneys' fees, and all other available relief, against the Defendant, because of certain wrongful acts of the Defendant complained of herein - e.g., (i) the enactment and implementation of statutes and laws that carved majority majority municipalities from majority minority counties, with the effect of significantly diluting the voting rights and political access of the Plaintiffs, and (ii) the planned enactment and implementation of certain pending legislation to create the County of Milton, which would further dilute and abridge the voting rights and political access of Plaintiffs, and otherwise cause the Plaintiffs harm.

#### **PARTIES**

2. Shelia Garvin is an individual, registered voter, and resident of the City of Dunwoody, in DeKalb County, in the State of Georgia.

3. Leola Gordon is an individual, registered voter, and resident of the City of Johns Creek, in Fulton County, in the State of Georgia.

4. Portia Codjoe is an individual, registered voter, and resident of the City of Johns Creek, in Fulton County, in the State of Georgia.

5. Lisa R. Barnes is an individual, registered voter, and resident of the City of Dunwoody, in DeKalb County, in the State of Georgia.

6. Joyce Carlisle is an individual, registered voter, and resident of the City of Dunwoody in Dekalb County, in the State of Georgia.

7. Joseph Echols Lowery is an individual, registered voter, and resident of Fulton County, but he does not live in Sandy Springs, Milton, Chattahooche Hills, or Johns Creek, Georgia.

8. Brenda Pace is an individual, registered voter, and resident of DeKalb County, in the State of Georgia, but she is not a resident of Dunwoody, Georgia.

3

9. All of the Aggrieved Voter Plaintiffs are black and/or of African descent.

10. The Georgia Legislative Black Caucus, Inc. is an association of elected officials from the State of Georgia, who are (i) black and/or of African descent, and (ii) hold an elected office in the State of Georgia.

11. Defendant is an individual and elected official serving as the Governor of State of Georgia, who may be served by second original by personal service at his office, located at The Office of the Governor State of Georgia, 203 State Capitol, Atlanta, Georgia 30334.

## JURISDICTION AND VENUE

9. The Court has personal jurisdiction over the Defendant, insofar as the Defendant is an elected official in, and resident of, the Northern District of Georgia.

10. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question – VRA and §1983).

11. This Court has pendent jurisdiction and supplemental jurisdiction over any state law claims alleged in this Complaint pursuant to 28 U.S.C. § 1367.

12. Venue in this action properly lies in the Northern District of Georgia pursuant to 28 U.S.C. § 1391.

**FACTS**

13. During the course of the last thirty years, minorities, specifically blacks, have become the dominant racial group in Fulton County and DeKalb County.  These individuals have also demonstrated a cohesive political identity, as evidenced by their similar voting patterns and support for black candidates in elections. The immediate consequence of this new status as a salient voting majority is that minorities now enjoy greater access to the institutions of political power at the county level in both Fulton and DeKalb County.

14. Specifically, according to the 2000 U.S. Census, the population in Fulton County was 48.1% white and 44.6% black. And by 2005, Fulton County's population was 44.1% black and 45.3% white, with remaining 10% (approximately) composed of other minority races. See US Census Bureau, American Community Survey:     Data     Set:     Fulton     County.     2006, http://factfinder.census.gov (September 28, 2008).

15. However, starting in 2005, the Defendant passed laws to establish political enclaves within Fulton County and DeKalb County that were predominantly white, unlike the political jurisdictions from which they were carved.  These municipal voting districts ("MVDs") supplanted the fully functional and racially balanced county governments that, for over 150 years,

5

had provided all local government services for the citizens of Fulton County and DeKalb County.

16. These new MVDs were the City of Sandy Springs, created in 2005, the City of Milton, created in 2006, the City of Johns Creek, created in 2006, the City of Chattahoochee Hills, created in 2007, and the City of Dunwoody, created in 2008.

17. In contrast to Fulton County, the recently created City of Sandy Springs has a population that is 12% black and 78% white. The overwhelming majority, if not all, of the elected officials who now control the City of Sandy Springs, formerly controlled by minorities, are white.

18. In contrast to Fulton County, the recently created City of Milton has a population that is 4.6% black and 88.6% white. The overwhelming majority, if not all, of the elected officials who now control the City of Milton, formerly controlled by minorities, are white.

19. In contrast to Fulton County, the recently created City of Johns Creek has a population that is 4.1% black and 89.54% white. The overwhelming majority, if not all, of the elected officials who now control the City of Johns Creek, formerly controlled by minorities, are white.

20. In contrast to Fulton County, the recently created Chattahoochee Hills has a population that is 18.02% black and

6

80.94% white. The overwhelming majority, if not all, of the
elected officials who now control the City of Chattahoochee
Hills, formerly controlled by minorities, are white.

21. Likewise, according to the US Census, DeKalb County is 54.2%
black and 35.8% white.   See Profile of General Demographic
Characteristics: 2000. DeKalb County, Georgia. US Census
Bureau, Census 2000.

22. In contrast to the County of DeKalb, the recently created
City of Dunwoody has a population that is 4.4% black and 85%
white. The overwhelming majority, if not all, of the elected
officials who now control the City of Dunwoody, formerly
controlled by minorities, are white.

23. Moreover, the Defendant created these MVDs outside of the
normal legislative process.

24. First, the Defendant repealed a state law requiring that all
municipalities directly provide at least three municipal
services to maintain or obtain a charter.

25. Second, the Defendant repealed a state law that required at
least three miles between any new city and any existing city.

26. Lastly, although the charters for each of the MVDs clearly
impacted the county from which it was carved, the Defendant
designated the legislation creating the MVDs "state" and not
"local" legislation, so as to nullify the right of certain of

7

the Aggrieved Legislator Plaintiffs to vote on the legislation that created the MVDs, and directly affected their constituencies, prior to the legislation being presented to the entire legislative body.[1]

27. Furthermore, despite the fact that the legislation associated with the creation of the MVDs was deemed "state" wide legislation, the Defendant prohibited the majority of black voters in Fulton County and DeKalb County from voicing their opinions on the MVDs, by only allowing local referendums, e.g., the putative residents of Sandy Springs or Milton, to vote on the creation of the MVDs.

28. Lastly, the Defendant's creation of the MVDs, and all the ancillary acts necessary to create the MVDs, served no apparent state purpose or objective, as the acts were not done in response to the traditional triggers for redistricting, e.g., new U.S. census results.

---

[1] Historically, in accord with the intent and purpose of the established parlimentary procedures in the Georgia legislature, any proposed legislation, e.g., the charters for the MVDs, that had a significant "local" impact was required to pass through a committee composed of legislators whose constituents would be affected by the proposed legislation.   However, the Defendant inappropriately deemed the MVD charters "state" wide, instead of "local" legislation, so that the Aggrieved Legislator Plaintiffs were blocked from voting on the legislation for the MVD charters, as had historically been their right on any "local" legislation.

**CAUSE OF ACTION I**
**Section 2 of Voting Rights Act**
**42 U.S.C. §1973c**
**(Vote Dilution)**

29. Plaintiffs re-allege each of the above listed paragraphs as though fully set forth herein.

30. Because of certain historical proclivities toward racial discrimination in is voting procedures and policies, the State of Georgia is a "covered" jurisdiction under §4 of the Voting Rights Act of 1965, 42 U.S.C. §1973b.

31. Since the passage of the VRA in 1965, there have not been any cities created in either Fulton or DeKalb County other than the MVDs.

32. The creation of the MVDs by the Defendant constitutes an act of redistricting under Section 2 of the VRA, because the incorporation of the MVDs affects the political access or representation of minorities in Fulton and DeKalb County, as well as, within the newly created MVDs.

33. Specifically, under Georgia law, the county is the primary subdivision of the State, responsible for rendering the services of local government.  The county system is a state legislative creation, embodied in Article IX of the Georgia Constitution and Title 36 of the Georgia Code.  Municipalities are further subordinate subdivisions of the State, but

9

pursuant to Georgia law, the two are exclusive jurisdictions in terms of the provision of local government services.

34. In particular, the Georgia Constitution prohibits either governmental unit from providing duplicative or overlapping public services, without the consent of the other – i.e., a municipality cannot act outside of its borders without the consent of the surrounding county, and no county may act within the borders of an enclosed municipality without the consent of the municipality.

35. Wherefore, the creation of the MVDs in Fulton and DeKalb County is per se an act of redistricting because the political powers granted to each unit of local government are generally exclusive of the other, with each unit having its own elected governance structure.

36. Prior to the creation of the MVDs listed herein, the Plaintiffs participated in the political process as members of a cohesive and geographically compact voting block in the applicable political unit – the county.

37. For example, in both Fulton and DeKalb County, at least half of the county commissioners responsible for the administration in each county is a minority; however, in each of the MVDs, very few minorities, if any, have been elected to a executive position or position of authority.

10

38. Thus, minorities and their elected leadership outside of the MVDs, who previously exercised access to the local government within the newly created MVDs, no longer possess such access or influence, while the minorities inside of each newly created MVD lose their elected leadership, and no longer enjoy the voting rights held prior to the creation of the MVDs.

39. Accordingly, the Defendant's creation of the MVDs listed herein, greatly reduced, diluted and abridged the voting rights, political access, and the opportunity to affect political outcomes of the Plaintiffs because the Defendant's actions complained of herein led to standards, practices, and procedures that resulted in the denial, abridgment and dilution of the Plaintiffs' right to vote and consequent political access in the MVDs, in violation of §2 of the Voting Rights Act, 42 U.S.C. § 1973.

40. Specifically, the Aggrieved Voter Plaintiffs experienced a drastic reduction in pro rata voting rights, far in excess of the 10% threshold for per se voter dilution recognized by federal law. See Chen v. City of Houston, 206 F.3d 502 (5th Cir. 2000) (population variation between districts of greater than 10% establishes prima facie case of vote dilution and state must justify variance by invoking other legitimate concerns); Montiel v. Davis, 215 F. Supp. 2d 1279 (S.D. Ala.

11

2002) (maximum deviation of greater than 10% automatically establishes a prima facie violation of the one-person, one-vote principle for purposes of equal protection claim; burden of proof shifts to the State to justify the deviations by showing a rational and legitimate state policy for the districts).

41. Likewise, as a result of the Defendant's creation of the MVDs, the Aggrieved Legislator Plaintiffs suffered a loss of voting rights and political access in the MVDs, wherein they previously exercised voting rights and political access.

42. Moreover, the carving of the MVDs from Fulton and DeKalb Counties by the State of Georgia constitutes an act of redistricting and reverse annexation, which clearly subjects the creation of the MVDs to the standards of racial fairness found in the VRA.

43. Finally, the Defendant is currently considering legislation that would carve an entire county from Fulton County, i.e., HR 21, which would create Milton County from the northern half of Fulton County, and have similar demographics to the MVDs, relative to the current incarnation of Fulton County.

44. Wherefore, given the totality of the circumstances, the Defendant has diluted and abridged the right to vote of the Plaintiffs, relative to their prior voting status before the

incorporation of the MVDs, and plans to further that harm with the creation of a county, similar in nature to the MVDs, Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged here, and this suit for declaratory and injunctive relief is the only means of securing adequate redress from the unlawful acts of Defendant. Plaintiffs will continue to suffer irreparable injury from the acts, policies, and practices of Defendant, as set forth herein, unless such acts are declared illegal and enjoined by this Court.

### CAUSE OF ACTION II
### 42 U.S.C. § 1983
### 14th AMENDMENT
### (Equal Protection)

45. Plaintiffs re-allege each of the above listed paragraphs as though fully set forth herein.

46. The right to vote and exercise political access generally is protected by the 14th Amendment's equal protection clause (race).

47. In creating the MVDs, the Defendant engaged in unusual and atypical political maneuvers and parliamentary techniques to circumvent any opposition to the creation of the MVDs.

48. Moreover, the creation of the MVDs was not in response to a traditional impetus for redistricting, nor was there any

legitimate or permissible state purpose or objective fulfilled by the creation of the MVDs.

49. However, the Defendant's creation of each MVD had the same insidious effect upon each of the respective Plaintiffs – i.e., a drastic reduction in efficacy of their right to vote, caused by a drastic change in the ratio of white to black voters within each of the MVDs compared to each county at large.

50. Indeed, the newly incorporated MVDs constitute a poorly veiled attempt to gerrymander voting districts within each the respective counties, because the MVDs can serve no other valid state purpose as the creation of the MVDs fulfilled no apparent state objective, and that the MVDs perform the same functions, exercise the same authority, and control the same resources within different boundaries relative to the undivided former jurisdictions.

51. In addition, there is ample evidence of impermissible private intent underlying the Defendant's creation of the MVDs, as at several community meetings held by the Department of Justice, and agents for the Defendant, where the public voiced opinions on the creation of the MVDs, the public record for these meetings clearly demonstrates negative racial sentiment and motivations.

14

52. Moreover, both Fulton and DeKalb counties are racially polarized geographically, with distinct blocks of minority and white populations being geographically clustered in each county.

53. Accordingly, because the Defendant gerrymandered Fulton and DeKalb counties to create the MVDs - i.e., the creation of the MVDs (i) served no legitimate or reasonable state purpose, (ii) required unusual state action to accomplish, (iii) diluted and abridged the voting rights of blacks, a protected class, the creation of the MVDs is a per se violation of the Plaintiff's equal protection rights under the 14th Amendment.

54. WHEREFORE, as a result of the equal protection violations of the 14th Amendment, Plaintiffs are entitled to (i) a declaration that the Defendant's creation of the MVDs violated Plaintiffs' rights under the US Constitution and the aforementioned statutes, and (ii) an injunction enjoining the further implementation of legislation, such as HR 21, with anticipated effects similar to those caused within the MVDS, and whatever additional relief the Court deems just and proper.

**CAUSE OF ACTION III**
**42 U.S.C. § 1983 -- 15th AMENDMENT**
**(Vote Denial and Fencing Out)**

55. Plaintiffs re-allege each of the above listed paragraphs as
    though fully set forth herein.

56. The right to vote, associate with like minded individuals,
    and exercise political access are protected by the 15th
    Amendment.

57. The Defendant's creation of the MVDs within Fulton and
    DeKalb County led to a drastic reduction in efficacy of their
    right to vote, caused by a drastic change in the ratio of
    white to black voters within each of the MVDs compared to each
    county at large.

58. Indeed, the creation of the MVDs within Fulton and DeKalb
    County effectively carved out super majority majority
    political units from majority minority political units.

59. For those Plaintiffs residing, or representing constituents,
    within a MVD, the extremity of the changes to the voting
    demographics caused by the creation of the MVDs constitutes
    vote denial and abridgement in violation of the 15th Amendment.

60. Moreover, for those Plaintiffs who reside, or represent
    constituents who reside in Fulton or Dekalb County, but not in
    a MVD, the creation of the MVDs has (i) effectively "fenced

16

out" these voters from participating in the political process for each MVD, and (ii) hindered the ability of those Plaintiffs to associate with like minded voters, form voting blocks, and exercise the political associations and influence that they possessed and exercised prior to the formation of the MVDs.

61. WHEREFORE, for the 15th Amendment violations described in this Complaint – e.g., vote denial for those Plaintiffs within a MVD and "fencing out" for those Plaintiffs not in a MVD, Plaintiffs are entitled to a declaration that the Defendant's creation of the MVDs violates Plaintiffs' rights under the US Constitution and the aforementioned statutes, an injunction enjoining the further implementation of legislation, such as HR 21, with anticipated effects similar to those caused by the creation of the MVDS, and whatever additional relief the Court deems just and proper.

### GENERAL PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment in their favor, and against the Defendant, as follows:

(A)    That process issue and service be made according to law;

(B)    That this Complaint be served upon Defendant in

accordance with law;

(C)     For   a   declaration   that   the   Defendant's   acts
complained of herein are unlawful under state and/or
federal law, and that the city charters of each of the
MVDs be deemed null and void;

(D)     For the entry of an injunction prohibiting the
further implementation of the MVDs, and any legislation,
such as HR 21, with anticipated effects similar to those
caused by the MVDS;

(E)     For an award of all costs of litigation, including
without limitation, attorneys' fees; and

(F)     For all other relief the Court deems just and
proper.

Respectfully submitted, this 28th day of March, 2011.

HERNAN/TAYLOR & LEE, LLC

Jerome Lee
Georgia Bar #: 443455

6855 Jimmy Carter Boulevard
Building 2100, Suite 2150
Norcross, Georgia 30071
Telephone: (770) 650-7200
Facsimile: (678) 735-4512
Email:  jerome@htlweb.com
Attorneys for the Plaintiffs

18